This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41072**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**CARLOS SANCHEZ-TRILLO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** After a jury trial, Defendant Carlos Sanchez-Trillo was convicted of possession of a controlled substance in violation of NMSA 1978, Section 30-31-23(A), (F) (2019, amended 2021), and tampering with evidence in violation of NMSA 1978, Section 30-22-5 (2003). On appeal, Defendant argues that (1) trial counsel provided ineffective assistance of counsel by failing to secure the admission of potentially exculpatory

evidence, and (2) his convictions for possession of a controlled substance and tampering with evidence violate double jeopardy. Unpersuaded, we affirm.

## DISCUSSION

### I. Ineffective Assistance of Counsel

**{2}** Defendant argues that his trial counsel's "fail[ure] to secure the admission of exculpatory evidence . . . prejudiced [Defendant] in violation of his right to effective assistance of counsel." We conclude that Defendant failed to establish a prima facie case of ineffective assistance of counsel.

**{3}** Reviewing Defendant's claim de novo, *see State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44, we apply the two-prong test from *Strickland v. Washington*, 466 U.S. 668 (1984). Defendant must establish that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Dylan J.*, 2009-NMCA-027, ¶ 36. In order to show prejudice, "counsel's deficient performance must represent so serious a failure of the adversarial process that it undermines judicial confidence in the accuracy and reliability of the outcome." *Id.* ¶ 38 (text only) (citation omitted).

**{4}** The State asks us to dispose of Defendant's ineffective assistance of counsel claim on the second prong because Defendant has failed to show prejudice. *See State v. Hernandez*, 1993-NMSC-007, ¶ 27, 115 N.M. 6, 846 P.2d 312 ("On review [of ineffective assistance of counsel claims], we need not consider the two prongs of the test in any particular order."). We agree with the State that Defendant has failed to satisfy the prejudice prong, and we therefore affirm on that basis without addressing whether counsel's performance was deficient.

**{5}** Defendant's claim is related to a motion filed by his original counsel, which sought admission of a recording of a jail phone call that, according to Defendant, includes admissions of guilt from Sarah Lynne-Miranda—the person who was in the car with Defendant prior to his arrest. The district court addressed the hearsay statements on the morning of trial, but denied the motion because Defendant's substitute counsel was unable to speak to the unavailability of Ms. Miranda in order to satisfy the hearsay exception of statements against penal interest. *See* Rule 11-804 NMRA.

**{6}** Defendant's claim of prejudice is lacking both legally and factually. His legal argument consists of just one conclusory sentence: "In this case, substitute counsel's deficient performance in failing to establish Ms. Miranda's unavailability and secure the admission of her statement deprived [Defendant] of the only substantive evidence available to support the theory of defense." And the record does not include the facts necessary to review this claim; Defendant has not made a recording or transcript of the alleged jail phone call part of the record on appeal. *See State v. Druktenis*, 2004-NMCA-032, ¶ 44, 135 N.M. 223, 86 P.3d 1050 ("It is [the d]efendant's obligation to

provide this Court with a sufficient record proper."); *State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review.").

**{7}** Because Defendant has not established a prima facie case of ineffective assistance of counsel, we reject his claim. This does not preclude Defendant from raising his ineffective assistance of counsel claims in a habeas corpus proceeding. *See State v. Cordova*, 2014-NMCA-081, ¶ 16, 331 P.3d 980; *State v. Paredez,* 2004-NMSC-036, ¶ 22, 136 N.M. 533, 101 P.3d 799 ("[W]hen the record does not contain all the facts necessary for a full determination of the issue, an ineffective assistance of counsel claim is more properly brought through a habeas corpus petition.") (internal quotation marks and citation omitted)).

## II. Double Jeopardy

**{8}** Defendant argues that his convictions for possession and tampering with evidence violate principles of double jeopardy because this Court must presume that the conduct was unitary under *State v. Foster,* 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140, and *State v. Franco*, 2005-NMSC-013, ¶¶ 9, 11, 137 N.M. 447, 112 P.3d 1104, and the Legislature did not intend multiple punishments under the two statutes. The State argues that there was no double jeopardy violation because *Foster* and *Franco* do not apply and the acts of possession and tampering constituted distinct conduct. Although we agree with Defendant that the presumption of unitary conduct from *Foster* applies here, we conclude, based on more recent precedent, that the presumption is not dispositive in this case and that Defendant engaged in distinct conduct. We therefore hold that no violation of double jeopardy occurred.

**{9}** We review Defendant's double jeopardy claim de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. There are two types of double jeopardy claims: double description and unit of prosecution. *Id.* For double description claims such as this one— where the same conduct is alleged to have violated two different statutes—we apply a two-part test from *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. We first consider whether the conduct was unitary. *Swick*, 2012-NMSC-018, ¶ 11. To determine whether the conduct at issue was unitary, we consider whether the acts are "separated by sufficient indicia of distinctness." *State v. Phillips*, 2024-NMSC-009, ¶ 38, 548 P.3d 51 (text only) (citation omitted). To make this determination, we employ factors from *Herron v. State*, considering whether the acts were separated by indicia such as time, space, or an intervening event. 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624 (outlining the factors); *Phillips*, 2024-NMSC-009, ¶ 38 (requiring courts to consider the *Herron* factors when analyzing unitary conduct in double description cases). If the conduct was not unitary, "there is no double jeopardy violation." *Swick*, 2012-NMSC-018, ¶ 11. If we determine that the conduct was unitary, we then turn to the second prong of the *Swafford* analysis and consider whether the Legislature intended punishment for both crimes separately. *Id.*

**{10}** Turning to the first prong, when considering whether conduct is unitary, our Supreme Court held in *Foster* that "we must presume that a conviction under a general

verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative." 1999-NMSC-007, ¶ 28. That is, where convictions result from general jury verdicts that do not specify what factual basis supports each conviction, and those convictions could result in a violation of double jeopardy, we must presume unitary conduct. *Id.* This is known as the *Foster* presumption.

**{11}** Defendant relies exclusively on the *Foster* presumption (and does not apply the *Herron* factors). He argues that the presumption applies here because "the jury was instructed generally to find [that Defendant] 'possessed' methamphetamine, and that he tampered with it when he 'hid and/or placed a plastic baggie containing methamphetamine in his mouth.'" The instruction for possession required the jury to find that "[D]efendant had methamphetamine in his possession" and that he "knew it was methamphetamine." The tampering instruction required that the jury find that "[D]efendant hid and/or placed a plastic baggie containing methamphetamine in his mouth" and that he "intended to prevent the apprehension, prosecution or conviction of himself for the crime of possession." Defendant contends that "[n]othing about the jury instructions separated the conduct underlying each charge" and that we must therefore presume unitary conduct under *Foster*.

**{12}** The State argues that the *Foster* presumption does not apply because neither the possession nor the tampering instructions were written in the alternative. We do not read *Foster* to exclusively apply to jury instructions written in the alternative. Instead, we believe that the *Foster* presumption applies generally when the jury issues verdicts that do not specify what factual basis the jury relied upon and one of the potential "alternative bases for conviction . . . is 'legally inadequate'"—i.e., a violation of double jeopardy. *Foster*, 1999-NMSC-007, ¶ 27; *see State v. Simmons*, 2018-NMCA-015, ¶ 27, 409 P.3d 1030 ("When the conduct underlying two convictions could be unitary under the facts, but we are unsure if the jury relied on that unitary conduct for both convictions, we nevertheless assume for the purposes of our double jeopardy analysis that the conduct was unitary because one of the *options/alternatives/scenarios is legally inadequate*." (emphasis added)); *Phillips*, 2024-NMSC-009, ¶ 41 (assuming without deciding that the *Foster* presumption applied to a manslaughter instruction not written in the alternative where the instructions did not specify whether the same force was used to complete manslaughter and aggravated battery).

**{13}** Here, while the tampering instruction specifies what factual basis the jury was required to rely upon—Defendant hiding the methamphetamine in his mouth—the possession instruction generally allowed the jury to convict Defendant if he had methamphetamine in his possession at any point. The jury instructions do not specify when Defendant possessed the methamphetamine for the purposes of his conviction. Because Defendant could have possessed the methamphetamine while he tampered with it, and therefore one of the potential factual scenarios is legally inadequate, we agree with Defendant that the *Foster* presumption applies. *See Foster*, 1999-NMSC-007, ¶ 27.

**{14}** However, we do not agree that the *Foster* presumption must be applied conclusively, as our Supreme Court did in *Franco*. In *Franco*, the Court applied the *Foster* presumption to facts similar to those presented here—the defendant was charged with possession of a controlled substance and tampering with evidence—and the jury was given nearly identical instructions. *See* 2005-NMSC-013, ¶¶ 2-3, 8. The *Franco* Court held that because "the jury might have based its verdict on the theory that [the d]efendant possessed the cocaine when she tampered with evidence," the *Foster* presumption was applicable. *Id.* ¶ 11. Conclusively applying the presumption that the defendant's conduct was unitary, the Court moved on to the second prong of the double description analysis. *Id.*

**{15}** Here, instead of applying the presumption conclusively and continuing to the second prong, as was done in *Franco*, we look to more recent precedent that makes clear that the presumption is rebuttable. In *State v. Sena*, our Supreme Court held that once *Foster* is applied, it "does not require a further presumption that the same conduct was then relied upon by the jury in convicting [the d]efendant of each crime." 2020-NMSC-011, ¶ 54, 470 P.3d 227. Therefore, "the *Foster* presumption is rebutted by evidence that each crime was completed before the other crime occurred." *Id.* Relying on *Sena*, our Supreme Court later reiterated in *Phillips* that "the *Foster* presumption should not be applied conclusively, but is instead rebutted by evidence in the record supporting distinct conduct." *Phillips*, 2024-NMSC-009, ¶ 40 n.4 (citing *Sena*, 2020-NMSC-011, ¶ 54). Because this outcome is in conflict with *Franco*, the *Phillips* Court clarified that "*Sena*, rather than *Franco*, is the proper analysis." *Id.*

**{16}** Therefore, in accordance with *Sena*, 2020-NMSC-011, ¶ 54, we must determine whether the *Foster* presumption is rebutted by evidence of distinct conduct. Essentially, we return to the original question presented in the unitary conduct analysis: whether "the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses."[1] *State v. Reed*, 2022-NMCA-025, ¶ 9, 510 P.3d 1261 (text only) (citation omitted). In order to determine whether different factual bases could be inferred, we consider "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *Sena*, 2020-NMSC-011, ¶ 46. We conclude that the jury here could have reasonably inferred independent factual bases for the charges of possession and tampering with evidence.

**{17}** The following facts were presented to the jury at trial. On August 19, 2020, Defendant was in a car driven by Ms. Miranda on Highway 70 in Otero County when the two pulled into a border patrol checkpoint. After a K9 alerted at the rear of the vehicle, Agent David Weems asked for Ms. Miranda's consent to search the vehicle in a secondary inspection area. Once in the secondary inspection area, Defendant and Ms.

---

[1]The *Foster* presumption does not *always* produce a circular analysis that renders the presumption illusory. The presumption is illusory where, as here, it is triggered by a jury instruction that is vague or general. But the presumption is not illusory when triggered by a jury instruction that is written in the alternative. Under those circumstances, the presumption does actual analytical work by excluding from the analysis any alternatives that could not violate double jeopardy; we presume that the jury relied on an alternative that could violate double jeopardy. *See, e.g., Sena*, 2020-NMSC-011, ¶¶ 52-54.

Miranda exited the vehicle and sat down in a waiting area. While Agent Weems was searching the car, Agent Luis Vergara approached Defendant and Ms. Miranda in the waiting area and noticed Defendant "grabbing his stomach." When asked if he was okay, Defendant indicated that he was not. Agent Vergara performed a pat down on Defendant, at which point Defendant "started gagging and coughing," eventually pulling out a plastic bag from his mouth and throwing it on the ground. The agent observed that the bag had a "crystal-like substance" in it. Defendant then stated that the contents of the bag were his and that Ms. Miranda "[did not] have anything to do with it." While the State did not necessarily distinguish between the two acts during the presentation of evidence, in closing argument, the State contended that it was "reasonable for [the jury] to infer that Defendant" possessed the methamphetamine inside of the car because he had to have known it was there and exercised control over it "in order to be able to put it in his mouth" and that the tampering occurred after Defendant exited the car when he put the plastic bag in his mouth.

**{18}** Based on the State's closing argument, we conclude that the jury could have reasonably inferred distinct factual bases for Defendant's two convictions. Specifically, the jury could have concluded that the possession was completed before the crime of tampering was committed, and when one crime is completed before the other occurs, the conduct is distinct and the *Foster* presumption is rebutted. *See Sena*, 2020-NMSC-011, ¶ 54. We therefore conclude that Defendant's conduct was not unitary. As such, there was no double jeopardy violation. *Swick*, 2012-NMSC-018, ¶ 11.

**CONCLUSION**

**{19}** We affirm.

**{20}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**KATHERINE A. WRAY, Judge**